UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE EDWARDS,

        CIVIL ACTION NO. 2:15-cv-11424-PDB-PTM

    *Plaintiff*,        DISTRICT JUDGE PAUL D. BORMAN
v.        MAGISTRATE JUDGE PATRICIA T. MORRIS

ANIL PRASAD,
GHULAM DASTGIR, &
CORIZON HEALTH, INC.

    *Defendants*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (Docs. 40, 46)**

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motions for Summary Judgment, (Doc. 40, 46), be **GRANTED**.

**II.    REPORT**

    **A.    Introduction**

Plaintiff Willie Edwards, a state prisoner, filed this *pro se* federal civil rights action under 42 U.S.C. § 1983 on April 16, 2015. (Doc. 1). Defendants Dr. Anil Prasad and Corizon Health, Inc. ("Corizon") filed an Answer on June 29, 2015, and Defendant Ghulam Dastgir filed an Answer on February 9, 2016. (Docs. 18, 45). Plaintiff alleges that Prasad recommended he undergo "eye surgery to remove cataracts from his right eye," and Plaintiff underwent such surgery on June 29, 2009. (Doc. 1 at 2-3). He further

1

alleges that the "two surgeries failed to improve eye sight" in his right eye. On July 7, 2009, Plaintiff "underwent a third surgery" and suffered a "total retinal detachment." (Doc. 1 at 3). His Complaint says that an "on-site optometrist informed [him] [on July 24, 2010] that his right eye due to previous surgeries and complications that he is blind in his right eye and in the opinion of the optometrist, further treatment or surgery would unlikely produce improvement in visual function in the right eye." (*Id.*). However, Plaintiff's Response to Defendants' Motion for Summary Judgment says he was informed of this on July 24, 2012. (Doc. 50 at 5). Although Plaintiff asserts that he "has been denied the medical care and from 2009 until the present," he does not allege any action or inaction on the part of any person beyond the July 24, 2010 date. (Doc. 1 at 3). Defendants contend that Plaintiff's complaint is barred by the three-year statute of limitations, and alternatively that they did not violate Plaintiff's civil rights.

Prasad and Corizon filed a Motion for Summary Judgment on January 22, 2016. (Doc. 40). Defendant Dastgir filed a Motion Joining to and Concurring in the other Defendants' Motion on February 20, 2016. (Doc. 46). Plaintiff filed a Response, (Doc. 50), and Defendants replied. (Docs. 51, 52). I issued a Report and Recommendation on June 23, 2016, (Doc. 54), urging District Judge Borman to dismiss the case for failure to state a claim within the applicable statute of limitations.

Plaintiff filed an Objection to the Report and Recommendation on September 1, 2016, suggesting error for "a dismissal based on . . . the statute of limitations argument." (Doc. 58 at 3). In his submission, Plaintiff essentially reiterates allegations in his Complaint and Response. Defendants replied to Plaintiff's Objection, noting that "the

2

U.S. Magistrate ruled on this matter as a Motion to Dismiss because Plaintiff failed to submit any evidence that would require a decision under the summary judgment standard. There is no evidence concerning 'fraud' in Plaintiff's current objections as well. His brief is not sworn and neither was his response to the Motion for Summary Judgment." (Doc. 58 at 2-3). Thus, neither party objected to application of the motion to dismiss standard to the motion which was labeled as one for summary judgment.

Conversion of a motion to dismiss into a motion for summary judgment can be problematic unless the parties are permitted a reasonable opportunity to present all material that is pertinent to such a motion. Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

However, analyzing a motion for summary judgment under the motion to dismiss standard does not present the same concerns. "Where appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment"; when done, the judgment "is functionally the same as a motion to dismiss or a motion for judgment on the pleadings." *Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968) (quoting 6 Moore's Federal Practice, P56.02(3), p. 2035) (internal quotation marks omitted); *accord Murphy v. Gibson*, 765 F.2d 145, at *1 (6th Cir. 1985).

Therefore, the Court was within its discretion to analyze the motion under the motion to dismiss standard. In addition, because this case is one filed by a person who was granted *in forma pauperis* ("IFP") status, the Court also had authority under 28 U.S.C. 1915(e)(2)(B)(ii), which mandates dismissal of an IFP complaint "at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief

3

may be granted." Though I did not expressly cite 28 U.S.C. § 1915 in my Report and Recommendation, I note that other courts regularly construe similar orders as an implicit exercise of this statutory authority. *See O'Neal v. Price*, 531 F.3d 1146, 1153 (9th Cir. 2008) ("Because [28 U.S.C. 1915(e)(2)(B)] impose[s] a mandatory duty, we construe a district court's termination of an in forma pauperis complaint during the screening process for a reason enumerated [there]in."); *see also Levin v. OMSNIC*, 573 F. App'x 142, 143 n.1 (3d Cir. 2014) (construing the district court's dismissal "as one under 28 U.S.C. § 1915(e)(2)(b)(ii)" where the judge sua sponte dismissed a plaintiff's complaint for failure to state a claim); *Pearson v. Prison Health Servs.*, 348 F. App'x 722, 724 n.1 (3d Cir. 2009) ("The District Court did not specify the statute or rule under which it dismissed Pearson's complaint. The District Court concluded that Pearson's complaint fails to state a federal claim, so it could have dismissed it under 28 U.S.C. § 1915(e)(2)(B)(ii) . . . . [and] we construe the dismissal as one under § 1915(e)(2)(B)(ii)"); *Amour v. McCalla*, 16 F. App'x 305, 305 (6th Cir. 2001) (construing the district court's dismissal "as pursuant to . . . § 1915(e)(2)(B)" where the judge "simultaneously granted pauper status" and "dismissed the action as frivolous"); *White v. Gunn*, 238 F.3d 433, at *1 n.3 (9th Cir. 2000) ("Because defendants argued that they were entitled to summary judgment as to White's due process claim, we construe the district court's dismissal as a sue sponte [sic] dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted."); *Blum v. Fed. Bureau of Prisons*, 189 F.3d 577, at *1 (10th Cir. 1999) ("We construe the dismissal of Blum's § 2241 petition as a dismissal for frivolousness under 28 U.S.C. § 1915(e)(2)(B)(i) because . . . he was

proceeding *in forma pauperis*; . . . [and] the district court found most of Blum's claims 'without merit.'"); *cf. Thompson v. Drug Enf't Admin.*, 492 F.3d 428, 436 (D.C. Cir. 2007) ("[W]e can easily imagine a case in which an appellate court expressly states that an appeal was frivolous but erroneously styles its disposition as an affirmance rather than as a dismissal. In such a case, we expect that the reviewing court would regard the earlier disposition as a constructive dismissal under section 1915(e)(2)."); *Holloway v. Smith*, 253 F.3d 700, at *1 (5th Cir. 2001) (per curiam) ("Although the district court dismissed . . . under 28 U.S.C. § 1915(e)(2)(B)(i), we note that Holloway was not proceeding *in forma pauperis* . . . . We construe the dismissal of his claims as frivolous under 28 U.S.C. § 1915A(b)(1).").

District Judge Borman rejected and remanded my Report and Recommendation with instructions that "it was completely inappropriate in this instance to treat Defendants' Rule 56 motions as anything other than summary judgment motions," and that Rule 12(b)(6) was "completely inapplicable." (Doc. 60 at 2). For this reason, I discuss the Defendants' Motions for Summary Judgment under the summary judgment standards below.

### B. Summary Judgment Standard of Review

When a movant shows that "no genuine dispute as to any material fact" exists, the court will grant her motion for summary judgment. Fed. R. Civ. P. 56(a). In reviewing such motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a

genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the nonmoving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the nonmoving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a pro se party's arguments are entitled to liberal construction, "this liberal standard does not, however, 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*,

339 F. Supp. 2d 505, 513 (S.D. N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D. N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### C. Analysis and Conclusion

#### 1. There Is No Genuine Issue of Material Fact as to Whether Plaintiff's Claims are Time-Barred

Federal courts apply state personal injury statutes of limitations to claims brought under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005). For civil rights suits filed in Michigan, the

statute of limitations is three years. Mich. Comp. Laws § 600.5805(10); *Elrod v. Hawry*, 53 F. App'x 770, 771 (6th Cir. 2002); *Carroll v. Wilkerson*, 782 F.2d 44, 44-45 (6th Cir. 1986). Although statutes of limitations are governed by state law, the question of when civil rights claims accrue remains one of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("While we have never stated so expressly, the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law."); *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007). A cause of action accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action. *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991).

Defendants contend that Plaintiff's claims are "barred by the statute of limitations" because he "knew of his injury" by December 7, 2009, and "[e]ven if he was confused, an optometrist explained the condition of his right eye on July 24, 2010." (Doc. 40 at 21). Indeed, Plaintiff's complaint describes an on-site optometrist informing him on July 24, 2010 "that his right eye due to previous surgeries and complications . . . is blind . . . [and] further treatment or surgery would unlikely produce improvement in visual function." (Doc. 1 at 3). As support for their claim, Defendants cite Plaintiff's complaint. (Doc. 40 at 21); (Doc. 1 at 3).

It appears that Defendants are correct that Plaintiff's cause of action accrued on July 7, 2009, when Plaintiff underwent a third eye surgery and suffered a total retinal detachment. (Doc. 1 at ID 3.) Plaintiff states that on July 24, 2010, he was informed that "due to his previous surgeries and complications that he is blind in his right eye and in

8

the opinion of the optometrist, further treatment or surgery would unlikely produce improvement in visual function in the right eye." *Id.* Therefore, as of July 24, 2010, Plaintiff was aware that his injury was permanent and not likely to be resolved in any way. Even if the Court were to use this more generous date of July 24, 2010, as the accrual date, Plaintiff's complaint is far from timely since it was not filed until April 16, 2015, nearly five years later.

Although Plaintiff's response to the motion raises, in the argument section, either a typographical error or the possibility that July 24, 2012 was the date he "was told . . . due to previous surgeries and complications that [his] right eye is blind and that no surgery or treatment would improve eye sight [sic]" (Doc. 50 at 5), he also identifies July 24, 2010 as the relevant date in the same Response. (*Id.* at 5). I suggest that an issue of fact cannot be created by a single reference to later date in a response to the motion, especially where the earlier date is also cited in the same response. I therefore recommend that summary judgment be granted on this ground.

### 2. Defendants Are Also Entitled to Summary Judgment Because the Evidence Does Not Show a Violation of Plaintiff's Eighth Amendment Rights

In *Estelle v. Gamble*, the Supreme Court held "that deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment's Cruel and Unusual Punishment Clause because it constitutes the "unnecessary and wanton infliction of pain'" and is "repugnant to the conscience of mankind" by offending our "evolving standards of decency." 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 97,

104 (1976)). To establish a cognizable claim, Plaintiff's allegations must show Defendant's 'sufficiently harmful' acts or omissions. *Id.* at 106. "[I]nadvertent failure to provide adequate medical care . . . will not violate the Constitution." *Id.*

The 'deliberate indifference' inquiry incorporates objective and subjective elements. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective inquiry asks whether the deprivation was "sufficiently serious," which a claimant satisfies where it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004) (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)) (internal quotation marks omitted). The subjective inquiry considers whether official's state of mind was sufficiently culpable; it requires a showing that an official "knows of and disregards an excessive risk to inmate health or safety." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Farmer*, 511 U.S. at 837) (internal quotation marks omitted). "[T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.*

### a. Prasad and Dastgir[1]

---

[1] I discuss Plaintiff's claims against Prasad and Dastgir simultaneously for convenience, as the grounds for granting summary judgment in their favor rests solely on arguments presented in Prasad's and Corizon's Motion. Although Dastgir presents several other arguments as to why summary judgment in his favor is appropriate in his Joinder to and Concurrence in Prasad's and Corizon's Motion, (Doc. 46), I decline to reach these arguments.

Plaintiff contends he "is completely and permanently blind in his right eye as a result of the inadequate surg[e]ries by Dr. Ghulam Dastgir," and casts blame on Prasad, who "recommended [Plaintiff] for eye surgery to remove cataracts." (Doc. 1 at 2-3). In his Response to Defendants' Motion for Summary Judgment, Plaintiff further claims that he "complain[ed] th[at] he could not see anything out of his right eye" after a "fight," which "'prov[es] that the doctors should have known th[at] there were other complications with the [P]laintiff[']s right eye but ignored all other warning signs including [P]laintiff constantly complaining about [his] problem[s]." (Doc. 50 at 6). Generously interpreted, Plaintiff seems to claim that his doctors' defective surgeries and advice required further, and perhaps more damaging, surgery. (*Id.* at 4) ("Only after the surgery they said there is a problem and my sight would eventually return but on . . . the next day [my] eye was hurting so bad until I had to be rushed back t[o] the hospital to have surgery again. On [July 7, 2009] [P]laintiff was sent . . . to have surgery again."). If his doctors had "done more testing on [him] before eye surgery," the trauma may not have happened. (*Id.* at 4-5).

Although Plaintiff's condition is serious, the record shows no serious dereliction of duty on the part of Prasad, and certainly nothing rising to the level of deliberate indifference. As he notes, "[t]o [his] knowledge, none of the off-site providers who evaluated Mr. Edwards [Plaintiff] on May 22, 2009 informed any of the onsite providers at Gus Harrison that Mr. Edwards suffered a detached retina," and he "followed all the recommendations of TLC Eye Clinic." (Doc. 41, Ex. B at 6). A follow-up on May 26, 2009 revealed "non-serious condition[s]," and another physician "did not note any

11

indication of a retinal detachment." (*Id.* at 7). Although Plaintiff contends that he was "placed in Segregation or hole and told that his eye [w]as ok," (Doc. 50 at 2), Prasad notes that "[Plaintiff] denied any medical problems [on June 2, 2009] when he transferred into segregation." (Doc. 41, Ex. B at 7); Doc. 42-1 at 52). He first learned Plaintiff suffered a loss of vision in his right eye "after the fight" on May 22, 2009, and he promptly referred Plaintiff to TLC and "drafted a retroactive consultation request to Corizon for offsite consultation." (Doc. 41, Ex. B at 5); (Doc. 42-1 at 31). He did this again on July 27, 2009 when Plaintiff "reported that he could not stop rubbing his eye due to the itching and burning." (Doc. 41, Ex. B at 12); (Doc. 42-1 at 150). At no point does the record evidence abnormal "delay" in Prasad's "care," and Prasad correctly notes that referring a patient to a specialist for evaluation in emergency circumstances "is appropriate and within the standard of care for a general practitioner." (*Id.* at 17). Prasad's sworn account, as corroborated by Plaintiff's medical records, shows nothing rising to the level of deliberate indifference to Plaintiff's treatment. *Cf. Flanory v. Bonn*, 604 F.3d 249, 255 (6th Cir. 2010) ("Flanory also alleges not only a toothache and resulting tooth extraction, but also a gum disease that developed as a result of not having had toothpaste with which to brush his teeth for almost a year. Denying an inmate toothpaste for 337 days bespeaks an indifference to basic hygiene needs."); *Blackmore*, 390 F.3d at 899 ("When prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment . . . for *non-medical reasons*, their conduct in causing the delay creates the constitutional infirmity."); *Shehee v. Saginaw Cty.*, 86 F.Supp.3d 704, 714 (E.D. Mich. 2015) ("Lloyd's practices of limited

contact, occasional care, and phoned-in treatment did not display the subjective disregard for Shehee's well being [sic] that characterizes deliberate indifference.").

Likewise, Defendants' evidence tends to exculpate Dastgir's conduct. Dastgir "fully and thoroughly explain[ed] all of the risks and benefits" of a cataract operation on April 14, 2009, and Plaintiff consented. (Doc. 42-2 at 1-2). After his fight, Plaintiff did not tell Lynn VanAusdale, RN, that he could not see, as only "a very superficial laceration over the eye lid" was recorded; he was given ice. (*Id.* at 22-23). Plaintiff reported vision loss the next day. (*Id.* at 31). Dastgir nevertheless responded with alacrity in each emergency situation that arose. (Doc. 41, Ex. B at 9-10, 11, 12); (Doc. 42-1 at 106). When Plaintiff presented Dastgir, post-surgery, with the "surpris[ing]" information that he "was hit extremely hard with a fist in the eye and completely lost vision" days before his cataract surgery, Dastgir diagnosed a total retinal detachment. (Doc. 42-1 at 121). He also realized that such injury had "lead[] to all of the complications during the surgery," and recommended follow-up treatment (*Id.*). In this manner, Plaintiff's omission imperiled his own surgery, through no fault of Dastgir. Plaintiff also frequently exacerbated his injuries by "rubb[ing] [his] eye extremely hard and br[ea]k[ing] the stitches." (*Id.* at 106); *see also* (*Id.* at 150) ("P[atien]t states inability to stop rubbing the eye due to itching and burning."). Yet Plaintiff's doctors—particularly Dastgir and Prasad—responded accordingly in each instance. Even if their treatment qualified as "negligent," as Plaintiff suggests, (Doc. 50 at 3), "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

Plaintiff includes another charge in his Response that "Prasad and [] Ghulam intentionally and knowingly mislead [P]laintiff into believing that his eye sight would return in an attempt to keep [P]laintiff from filing a Civil Lawsuit Action against them or for the statute [of] limitation[s] to run out." (Doc. 50 at 5).

As a preliminary matter, I note that Plaintiff did not include or allude to these allegations in his complaint. Although this could arguably disqualify such allegations from consideration absent a formal request for leave to amend, the permissive pleading standards governing cases filed pro se advise instead to regard these allegations "as a supplement" to Plaintiff's complaint. *Coleman v. Gullet*, No. 12-10099, 2012 WL 5986779, at *11 (E.D. Mich. Sept. 4, 2012); *see also Wright v. Sodexho Marriott Servs.*, 30 F. App'x 566, 566 (6th Cir. 2002) ("On reconsideration, the district court acknowledged Wright's response and considered the additional allegations within it, . . .); *JAT, Inc. v. Nat'l City Bank of Midwest*, 460 F.Supp.2d 812, 818 (E.D. Mich. 2006) ("Where Plaintiffs are not attempting to plead new causes of action against Defendants, but are merely providing additional support to their initial pleading, this Court is inclined to allow an implicit motion to amend at this stage.").

Prasad certifies that "I do not recall making . . . promises" that surgery would restore Plaintiff's sight. (Doc. 41, Ex. B at 18). And because Plaintiff left the correctional facility in December 2010 and was under the care of other providers thereafter, there is no evidence to suggest that Prasad and Dastgir "intentionally and knowingly" mislead Plaintiff following his departure. Rather, the evidence shows that Prasad and Dastgir merely attempted to restore Plaintiff's eyesight, and ultimately failed.

14

### b. Corizon

Plaintiff alleges he "still experiences pain and swelling to his right eye and . . . Corizon Health, Inc., ha[s] denied him any other treatment for his continued pain and suffering to his right eye." (Doc. 1 at 3). He reiterates this claim in his Response to Defendants' Motion for Summary Judgment. (Doc. 50 at 6). In their Motions, Defendants first posit that "[n]one of [] Corizon's employees violated [Plaintiff's] constitutional rights." (Doc. 40 at 23). Next, Defendants argue that Plaintiff "cannot identify a Corizon policy, procedure, or custom that caused . . . a constitutional violation." (*Id.* at 24).

As a contracted provider of prison health services, Corizon acted in the capacity of a governmental actor. *See West v. Atkins*, 487 U.S. 42, 53-54 (1988) ("[T]he inference to be drawn from *Estelle* is that the medical treatment of prison inmates by prison physicians is state action."). Plaintiff cannot hold Corizon vicariously liable for its employees' conduct. *See Rouster v. Cty. of Saginaw*, 749 F.3d 437, 453 (6th Cir. 2014) ("[P]rivate corporations cannot be held liable on the basis of respondeat superior or vicarious liability."). As such, liability will only attach if Corizon itself was a "moving force" behind the "deprivation of [Plaintiff's] federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *accord Shadrick v. Hopkins Cty.*, 805 F.3d 724, 752 (6th Cir. 2015) (Griffin, J., dissenting on other grounds); *Rouster*, 749 F.3d at 453.

As discussed, *supra*, Plaintiff provides no evidence that either Prasad or Dastgir violated his Eighth Amendment rights. Nor does evidence point to any other actors violating Plaintiff's rights. But even if a constitutional violation were found, Plaintiff's evidence must illustrate a "direct causal connection" between Corizon's "policies or

15

customs" and his "constitutional injury." *Gray v. City of Detroit*, 399 F.3d 612, 617 (6th Cir. 2005); *accord Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012) ("[L]iability only attaches where a custom, policy, or practice attributable to the [government actor] was the 'moving force' behind the violation of the plaintiff's constitutional rights."); *see also Shadrick*, 805 F.3d at 737 (describing a culpable state of mind as "failing to train and supervise . . . nurses working within the jail environment"). Plaintiff makes no such allegation. At most, he suggests Corizon should be held liable because his doctors negligently treated his eye condition or "denied him any other treatment for his continued pain and suffering." (Doc. 1 at 3). He does not go so far as to suggest that Corizon encouraged its employees—via practice, policy, or custom—to mislead or mistreat him. As Defendants note, Corizon approved Plaintiff's many ophthalmologic evaluations, consultations, and medication requests, and did not deny him continued treatment. *E.g.* (Doc. 42-1 at 153-55, 168-70, 178, 253-56, 265, 266).

Plaintiff also fails to "set forth *any* facts that there were prior instances of similar misconduct so as to show that [Corizon] was on notice that its training and supervision with respect to the use of . . . medical treatment was deficient." *Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir. 2013). Plaintiff might surmount this deficit if he could prove that Corizon had "final . . . authority" over the alleged constitutional violations. *See id.* at 479. But he attributes the bad acts at issue—namely, performing ineffective surgery and cradling Plaintiff's concerns in order to avert civil liability—to Prasad and Dastgir alone. (Doc. 50 at 4-5). In any case, Corizon plainly did not display deliberate indifference towards a violation of Plaintiff's Eighth Amendment rights.

16

For the reasons stated above, I recommend that Defendants' Motions for Summary Judgment be granted.

### III. <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection

17

No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: October 31, 2016                                    /s Patricia T. Morris
                                                          PATRICIA T. MORRIS
                                                          United States Magistrate Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 31, 2016.

s/Michael A. Sian
MICHAEL A. SIAN, Acting Case Manager

---